# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| ANDREW C. LIVINGSTON, #2209959 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20cv522 |
| | § | |
| TERRY GILBERT, ET AL. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendants Larry Winter, Colin Price, Brian Hampton, Laren Hudson, and Nathan Ervin's (together, the "County Defendants") Motion to Dismiss under Rule 12(b)(6) and Brief in Support (the "County Defendants' Motion to Dismiss") (Dkt. #35). Also pending is Defendants Christopher Keeland, Dick Roth, Donald Booe, Julie Pratt, Lacey Stewart, and Terry Gilbert's (together, the "Additional County Defendants," and together with the County Defendants, "Defendants") Motion to Dismiss under Rule 12(b)(6) and Brief in Support (the "Additional County Defendants' Motion to Dismiss") (Dkt. #66) (together with the County Defendants' Motion to Dismiss, the "Motions to Dismiss"). Plaintiff Andrew C. Livingston ("Plaintiff") filed a response (Dkt. #50) to the County Defendants' Motion to Dismiss, and the County Defendants filed a reply (Dkt. #51). Plaintiff filed a sur-reply. (Dkt. #54). Plaintiff also filed a response (Dkt. #73) to the Additional County Defendants' Motion to Dismiss, incorporating the arguments set forth in his response (Dkt. #50) and sur-reply (Dkt. #54). For the reasons that follow, the Court recommends the Motions to Dismiss (Dkt. ##35, 66) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

On June 11, 2020, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this lawsuit against Defendants.[1] (Dkt. #1) Plaintiff is currently housed in a Texas Department of Criminal Justice facility, but at all times relevant to his claims, he was confined at the Cooke County Detention Center (the "Detention Center"). During his tenure at the Detention Center, Plaintiff alleges that Defendants subjected him "to Cruel and/or Unusual treatment." (Dkt. #1, pp. 4-5). Specifically, Plaintiff alleges the following:

- Defendants Gilbert and Stewart "caused Plaintiff to not receive adequate medical treatment."

- Defendants Gilbert, Winter, Price, Hampton, Hudson, Ervin, Booe, Keeland, Roth, and Pratt "participated in acts of violence or caused acts of violence to occur[] to Plaintiff by omission of act[ion]."

- Defendant Hudson "strangled Plaintiff and caused injury."

- Defendant Price "used excessive force and taunted and threatened Plaintiff."

- Defendant Pratt "caused Plaintiff to be underfed and suffer hunger pangs constantly, as well as denied Plaintiff's right to prepare an effective defense for criminal trial."

- Defendant Stewart "committed perjury."

- Defendant Gilbert "subjected Plaintiff to cruel long-term isolation."

- "Plaintiff was not allowed to take a shower for three (3) weeks."

(Dkt. #1, p. 6). Plaintiff alleges that the incidents occurred as a "continuous scheme of events from May 2017 through August 2018." (Dkt. #1, p. 6). Plaintiff requests monetary damages and that the Detention Center be ordered to "offer treatment by mental health professionals." (Dkt. #1, p. 6).

---

[1] All claims against Defendant Holly Oliveira have been dismissed without prejudice. (Dkt. #71).

Plaintiff attached twenty Grievance Appeal Review documents to his Complaint, all of which deny the appeal. (Dkt. #1-1). The Grievance Appeal Review documents are dated between December 29, 2017, and July 27, 2018. (Dkt. #1-1). On February 11, 2021, the Court ordered Plaintiff to provide more information in connection with the last Grievance Appeal Review decision dated July 27, 2018 (Dkt. #1-1, pp. 20-21). (Dkt. #12). In that decision, Appeal Review Officer Deputy/Investigator Dick Roth denied Plaintiff's appeal concerning a search. Specifically, the decision states:

> The Board found that Officers had reason to believe that you may have been concealing contraband in your cell and/or on your person.
>
> Your claim, again, does not meet the grounds for a grievance.
>
> The Grievance Board findings and response was conducted according to approved policy, was factual, and provided you with a written response of those findings in a timely manner.
>
> You present no credible evidence that would change the original Grievance Board findings.

(Dkt. #1-1, p. 21). The Court ordered Plaintiff to provide the date of the search, specify which Defendant the grievance concerns and which complained-of action is at issue, and provide details as to what happened in the search and why he believes his constitutional rights were violated by the search. (Dkt. #12).

Plaintiff filed a response (Dkt. #15), asserting that it was "impossible" for him to know which search the Grievance Appeal Review decision concerned because he had been "subjected to numerous illegal searches and/or searches during his period of detention at the CCJ"; all grievance appeal decisions are usually "exactly the same"; and a "large portion" of his "legal property was destroyed" at intake at the TDCJ Gurney Unit in August 2018.[2] (Dkt. #15-1, pp. 2,

---

[2] Plaintiff did not name any employee of the TDCJ or Gurney Unit as a defendant in this case. Claims against any individual not named as a defendant will not be addressed.

4-5). Plaintiff then described multiple searches and seizures at the Detention Center and the TDCJ Gurney Unit that involved some of the named Defendants and other individuals not named as defendants. Specifically, Plaintiff argued that "said searches [at the Detention Center] were illegal because the searches proffered confiscation of attorney/client privileged mail and that documentation pertained to material (guilt/innocence) information intended to be mailed to [Plaintiff's] appointed counsel at the time." (Dkt #15-1, p 2). Plaintiff alleged that the "privileged mail contents" were then sent to the Cooke County District Attorney's Office. (Dkt. #15-1, p. 2). Plaintiff identified the following searches and seizures related to the named Defendants:

- Defendant Price "took/seized the privileged items and then took them to [Defendant] Sheriff Terry Gilbert who then dispensed the contents of the items to either the [Cooke County District Attorney] or other unknown persons who relayed it to the [Cooke County District Attorney]." (Dkt. #15-1, pp. 2-3).

- Defendant Price "confiscated[d] all of my personal items, including my trial preparations and legal writings shortly before my criminal trial and at that time I was a pro se litigant." (Dkt. #15-1, p. 3).

- Defendant Booe "took all of my trial prep[a]ration and legal work out of my cell and went through it page by page at a time when I was a pro se litigant which exposed my privileged information in violation of my right to secretly prepare a defense in my criminal case." (Dkt. #15-1, p. 3).

- Defendant Price and other individuals not named as defendants "came to my cell and strip searched my body and then detained me in the recreation yard for a lengthy period of time while a search of my property was performed and again my trial preparation work was out of order and had been gone through." (Dkt. #15-1, pp. 3-4).

- Defendant Hampton and other individuals not named as defendants "entered my cell while [Defendant] Nurse Stewart (female) and [an individual not named as a defendant] (female) remained outside the cell. Officer Talamantes [not a named defendant] ripped the velcro smock I was wearing. This caused me to be naked in the presence of 3 females which was very humiliating. Like being raped." (Dkt. #15-1, pp. 4-5).

Plaintiff did not state the specific dates of any of these searches or seizures at the Detention Center.

On March 9, 2022, the Court gave Plaintiff an opportunity to file an amended complaint. (Dkt. #23). The Court granted Plaintiff two extensions of time in which to file an amended complaint. (Dkt. ##27, 30). Plaintiff did not file an amended complaint; rather, he filed a motion to proceed with the original complaint and requested a *Spears* hearing. (Dkt. #32). The Court denied Plaintiff's request for a *Spears* hearing (Dkt. #33) and entered show cause orders (Dkt. ##34, 57) requiring Defendants to answer the Complaint.

On March 12, 2023, the County Defendants moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. #35), arguing that Plaintiff's claims should be dismissed because they are barred by the statute of limitations, Plaintiff's Complaint fails to state a claim for relief against the County Defendants, and the County Defendants are entitled to qualified immunity. Plaintiff filed a response (Dkt. #50) to the County Defendants' Motion to Dismiss, and the County Defendants filed a reply (Dkt. #51). Plaintiff filed a sur-reply. (Dkt. #54). On June 14, 2023, the Additional County Defendants moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the same reasons articulated in the County Defendants' Motion to Dismiss. (Dkt. #66). Plaintiff filed a response (Dkt. #73) to the Additional County Defendants' Motion to Dismiss, incorporating the arguments set forth in his earlier response (Dkt. #50) and sur-reply (Dkt. #54).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, any document attached to the motion to dismiss that is central to the claim and referenced by the complaint, and any facts subject to judicial notice. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

The Court is also mindful that it "must construe the pleadings of *pro se* litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-

01761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)).

### III. ANALYSIS

#### A. Statute of Limitations

Limitations may permit dismissal under Rule 12(b)(6) "where it is evident from the plaintiff's pleadings that the action is barred." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002)). Stated differently, dismissal is proper if the complaint affirmatively shows the plaintiff's claims are time barred and there is no basis for tolling. *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011). The forum state's general statute of limitations for personal injuries provides the applicable limitations period for § 1983 cases. *Matter of Hoffman*, 955 F.3d 440, 443 (5th Cir. 2020) (citing *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018)). Considering Texas law, the § 1983 limitations period is two years. *Id.* at 444 (citing *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015); Tex. Civ. Prac. & Rem. Code § 16.003); *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). While state law controls the limitations period, federal law determines the issue of accrual. *Matter of Hoffman*, 955 F.3d at 444. Under federal law, "the limitations period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Piotrowski*, 237 F.3d at 576 (internal citation and quotations omitted); *Shelby v. City of El Paso, Tex.*, 577 F. App'x 327, 331-32 (5th Cir. 2014) (per curiam) ("The standard in § 1983 actions provides 'that the time for

7

accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action.'") (quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)).

Defendants argue that any claims arising from the conduct of the grievances attached to Plaintiff's Complaint are barred by the two-year statute of limitations. (Dkt. #35, p. 5; Dkt. #66, p 5). Defendants deem Plaintiff's Complaint filed on July 2, 2020—the date the Clerk of Court received and docketed the Complaint. (Dkt. #35, p. 5; Dkt. #66, p 5). The mailbox rule is well-settled, however. The rule, first explained in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), provides that a *pro se* inmate's notice of appeal is deemed file on the date that the inmate gives the notice to prison authorities to be sent to the relevant court. In other words, the date upon which the prisoner places a legal document into the hands of prison authorities for mailing is the operative date for filing purposes. This doctrine has been applied to several types of prisoner filings. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) ("Our prior decisions, and decisions of our sister circuits, indicate that a habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing."). The mailbox rule certainly applies to § 1983 complaints. *See Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995) (holding that a *pro se* prisoner litigant's § 1983 complaint is filed as soon as the pleadings have been deposited into the prison mail system).

Here, Plaintiff dated his complaint, under penalty of perjury, on June 11, 2020. (Dkt. #1, p. 7). The Clerk of Court docketed his complaint on July 2, 2020. Because the mailbox rule is clear that a prisoner's complaint is deemed filed when he places it in the hands of prison officials for mailing, it cannot be said that Plaintiff filed his complaint on July 2, 2020—when the Clerk of Court received the complaint in the mail. Giving Plaintiff the benefit of the prison mailbox rule, the Complaint is deemed filed on June 11, 2020, the date Plaintiff signed and dated his Complaint.

Therefore, because Plaintiff filed his Complaint on June 11, 2020, any allegations concerning dates before June 11, 2018, are barred by the two-year statute of limitations.

Unfortunately, the Complaint and subsequent pleadings do not contain the specific date when each incident happened. Plaintiff alleges only a "continuous scheme of events from May 2017 through August 2018." (Dkt. #1, p. 6). However, Plaintiff attached Grievance Appeal Review decisions to his Complaint. With the exception of the last two Grievance Appeal Reviews (Dkt. #1-1, pp. 19-21), the decisions are all dated June 11, 2018, or before June 11, 2018. Clearly, any event about which he filed a grievance would have had to occur prior to the appellate review of the grievance filed. Accordingly, those complaints are time-barred and should be dismissed. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (courts may dismiss complaint for failure to state a claim when the existence of an affirmative defense, such as a statute of limitations bar, is apparent from the face of the complaint).

The last two Grievance Appeal Review decisions attached to the Complaint are dated June 15, 2018, and July 27, 2018.[3] While those dates fall within the two-year statute of limitations, Plaintiff does not provide the actual dates of the conduct giving rise to those grievances, either in his Complaint or in his various responsive pleadings, including his response (Dkt. #50) and sur-reply (Dkt. #54) to the County Defendants' Motion to Dismiss.[4] In Plaintiff's response and sur-

---

[3] As previously noted, the July 27, 2018, Grievance Appeal Review specifically discusses the search of either Plaintiff's person or cell for concealed contraband. (Dkt. #1-1, pp. 20-21). Plaintiff's Complaint lacks any factual allegation that any named defendant conducted an unreasonable search or seizure of any kind. Nonetheless, Plaintiff's subsequent pleadings mention various searches of his cell and/or person and confiscation of his legal material by Defendants Price, Gilbert, Booe, and Hampton. (*See* Dkt. #15-1).

[4] With respect to the June 15, 2018, Grievance Appeal Review decision, the appeal was filed on June 13, 2018. (Dkt. #1-1, p. 19). As there are several steps in the grievance process before a grievance appeal is filed, and because it takes time for each step of the grievance process to be resolved, the conduct giving rise to the grievance presumably occurred before June 11, 2018. (*See* Dkt. #15-4, p. 44 (describing the steps in the grievance process)). Therefore, the conduct giving rise to the June 15, 2018, Grievance Appeal Review likely did not occur within the two-year statute of limitations period. Furthermore, Plaintiff does not identify what conduct gave rise to this grievance.

reply to the County Defendants' Motion to Dismiss, Plaintiff does not urge that the conduct giving rise to any grievance or claim occurred within the two-year statute of limitations. Nor does Plaintiff assert that he did not become aware of his claims until August 2018. Rather, Plaintiff argues that he is entitled to equitable tolling because "it was simply impossible for him to file a suit while in [the Detention Center's] custody." (Dkt. #50, p. 2). Plaintiff asserts that the limitations period was tolled until August 2018 when he was transferred from the Detention Center to a TDCJ facility; therefore, because he filed his complaint within two years of August 2018, his claims are not barred by the statute of limitations. (Dkt. ##50, 54). Specifically, Plaintiff asserts:

> Plaintiff is not barred from bringing his suit or any claim therein by any statute of limitations because equitable tolling applies as Plaintiff was prevented from accessing any law library and/or legal directory and/or any other materials necessary to figure out how or where to file a lawsuit while he was in the custody of the Defendants at the Cooke County Jail/Sheriff's Department. The statute of limitations is therefore equitably tolled until the time that Plaintiff was transferred into the custody of the Texas Department of Criminal Justice in August of 2018. This suit was filed within two years of said date and was timely filed with equitable tolling applied.

(Dkt. #50, p. 1; *see also* Dkt. #54, p. 6 ("Plaintiff did bring this suit within two years of having been transferred out of the custody of Defendants and into the custody of the Texas Department of Criminal Justice and therefore within the two year statute of limitations presuming that equitable tolling is applicable.")).

The equitable tolling principles of the forum state control in § 1983 cases. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015). Under Texas law, equitable tolling is a sparingly invoked doctrine, to be used only in cases where the plaintiff has excusable ignorance of the limitations period and has shown diligence in pursuing his rights. *Montgomery v. Hale*, 648 F. App'x 444, 444 (5th Cir. 2016) (citing *Hand v. Stevens Transp., Inc. Emp. Benefit Plan*, 83 S.W.3d 286, 293 (Tex. App. 2002)); *see also Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 421

(5th Cir. 2013) (equitable tolling requires a showing that the litigant has been pursuing his rights diligently but some extraordinary circumstance stood in his way and prevented timely filing); *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) ("Equitable tolling is to be applied 'sparingly.'"); *Buchanan v. Sala*, No. 6:22-cv-00353-JDK, 2022 WL 18283194, at *2 (E.D. Tex. Nov. 17, 2022), *report and recommendation adopted*, No. 6:22-cv-353-JDK-JDL, 2023 WL 186865 (E.D. Tex. Jan. 12, 2023). Litigants may not use the doctrine of equitable tolling "'to avoid the consequences of their own negligence.'" *Vega v. Town of Flower Mound, Tex.*, 737 F. App'x 683, 685 (5th Cir. 2018).

Plaintiff's allegations regarding lack of access to the prison law library, denial of access to legal materials, and/or lack of legal counsel, to the extent alleged in support of tolling, fail to establish extraordinary circumstances worthy of equitable tolling, and analogous contentions have been deemed insufficient by the Fifth Circuit. *See Boswell v. Claiborne Par. Det. Ctr.*, 629 F. App'x 580, 582 (5th Cir. 2015) ("Boswell's contentions that he is entitled to equitable tolling of the limitations period because he 'had no knowledge of the civil law,' was given incorrect legal advice by a 'prison inmate counsel,' and lacked access to the prison law library while in administrative segregation are unavailing."); *Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir. 2000) (holding that ignorance of the law, temporary denial of access to legal materials, lack of knowledge of filing deadlines, and inadequacies of a prison law library are insufficient to warrant equitable tolling in the AEDPA context). And while Plaintiff contends that Defendants prevented him from filing his claims while at the Detention Center, Plaintiff avers that he has been in the custody of the TDCJ (and not the Detention Center) since August 2018 (Dkt. #1, p. 6; Dkt. #50, p. 1), leaving by Plaintiff's own admission a gap of approximately one year and ten months before filing this lawsuit after arriving at the TDCJ and/or the cessation of Defendants' alleged

11

interference. Plaintiff has provided no explanation for the twenty-two-month delay in filing his lawsuit after his transfer from the Detention Center to TDCJ custody. Plaintiff, who bears the burden, does not explain why such gap does not preclude a finding of reasonable diligence. *See Crostley*, 717 F.3d at 421 (equitable tolling requires a showing that the litigant has been pursuing his rights diligently, but some extraordinary circumstance stood in his way and prevented timely filing). Plaintiff's allegations do not demonstrate that limitations should be tolled. Because Plaintiff has not shown he is entitled to equitable tolling, any claim based on events occurring before June 11, 2018, is time-barred and should be dismissed.

## B. Failure to State a Claim

The Court also finds that Plaintiff's Complaint fails to state a claim for relief against Defendants.

In his Complaint, Plaintiff states in conclusory fashion that Defendants subjected him to "Cruel and/or Unusual treatment." (Dkt. #1, pp. 4-5). Plaintiff then proceeds to make cursory and general allegations about each Defendant. (Dkt. #1, p. 6). These conclusory allegations, however, are not supported by factual allegations regarding the specific violative conduct, such as the nature of the excessive force and violent acts, the circumstances giving rise to the excessive force and violent acts, what medical issues were not adequately treated, the conditions of his isolation, what he was fed and how the food was inadequate, when these events occurred, the duration of these events, or how he was injured by each event. Plaintiff's allegations in his Complaint therefore lack the requisite specificity and factual context to state a claim. Plaintiff has not demonstrated his inability to provide specific facts necessary to support his claims against Defendants. Moreover, the Court previously granted Plaintiff the opportunity to amend his Complaint to better state his claims, and he instead elected to proceed with his original Complaint. Based on the allegations in

12

that Complaint, Plaintiff has failed to satisfy his pleading burden to make factual allegations—as opposed to conclusory statements or threadbare recitals—sufficient to show any of the Defendants committed a constitutional violation. Such bare allegations do not require a *Spears* hearing to develop the claims. *See Bell v. Roberts*, 102 F.3d 551 (5th Cir. 1996) (citing *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985), *abrogated by Neitzke v. Williams*, 490 U.S. 319 (1989)). Plaintiff appears to be using the *Spears* hearing as a way to circumvent the pleading requirements. But Plaintiff has not alleged any facts that would demonstrate his inability to fully state any claims he has against Defendants. Therefore, all § 1983 claims against Defendants should be dismissed with prejudice for failure to state a claim for which relief can be granted. *See Gober v. Collier*, No. 6:20-cv-259, 2021 WL 2008812, at *4 (E.D. Tex. Apr. 14, 2021), *report and recommendation adopted*, No. 6:20-cv-259-JDK-JDL, 2021 WL 1998790 (E.D. Tex. May 19, 2021) ("Plaintiff's threadbare claim that his property has been stolen and that Defendants are liable thus fails to state a claim for which relief can be granted.").

Beyond the factual deficiencies in the Complaint, Plaintiff also asserts a number of allegations that do not state a viable constitutional violation. For example, Plaintiff's allegation that he was denied showers for three weeks fails to state a claim upon which relief can be granted. Courts have generally found that allegations of temporarily inadequate showers and proper cleaning do not amount to a constitutional deprivation. *See Mejia v. Ramirez*, No. 2:14-cv-238, 2016 WL 11473812, at *7 (S.D. Tex. Feb. 11, 2016) ("The Eighth Amendment does not require that inmates receive frequent showers."), *report and recommendation adopted*, No. 2:14-cv-238, 2016 WL 3661902 (S.D. Tex. July 11, 2016); *see also Ayala-rosario v. Westchester Cnty.*, No. 19-cv-3052 (KMK), 2020 WL 3618190, at *8 (S.D.N.Y. July 2, 2020) (finding the plaintiff cannot sustain a Fourteenth Amendment claim based on his allegations that he could not properly shower

as a result of his housing); *Santana v. City of New York*, No. 15-cv-6715, 2018 WL 1633563, at *7 (S.D.N.Y. Mar. 29, 2018) ("Denial of shower access for up to two weeks has been held not to be a violation of the Eighth Amendment." (citation omitted)); *Banks v. Argo*, No. 11-cv-4222, 2012 WL 4471585, at *4, at *10 (S.D.N.Y. Sept. 25, 2012) ("[E]ven assuming prison officials denied Plaintiff shower access for the entire time alleged in his complaint—thirteen days—his claim still fails as a matter of law."); *Devon v. Warden SCI-Mahanoy*, Civil No. 08-1448, 2008 WL 3890161, 4 (M.D. Pa. Aug. 19, 2008) (holding that thirteen days without shower, shave or recreation did not violate the Eighth Amendment); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) ("[A] two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs.'"); *Briggs v. Heidlebaugh*, Civil No. 96-3884, 1997 WL 318081 *3 (E.D. Pa. May 22, 1997) (holding that suspension of shower privileges for two weeks did not violate the Eighth Amendment); *DiFilippo v. Vaughn*, Civil No. 95-909, 1996 WL 355336 at *5 (E.D. Pa. June 24, 1996) (holding that the Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers); *Veteto v. Miller*, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992) (holding that deprivation of showers during 60 day period of placement in administrative detention did not violate the Eighth Amendment).

Additionally, Plaintiff's allegations that he was taunted and threatened do not state viable constitutional claims. *See, e.g.*, *Orange v. Ellis*, 348 F. App'x 69, 72 (5th Cir. 2009) ("[C]laims of verbal harassment do not reveal a constitutional violation. Mere words are not sufficient to support a Section 1983 claim"); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (holding that "claims of verbal abuse are not actionable under § 1983"); *Moody v. Lee*, No. 13-2745, 2014 WL 107944, at *5 (W.D. La. Jan. 9, 2014) ("[V]erbal threats or taunts, without more, do not support a

14

claimed constitutional violation. Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under § 1983.").

Plaintiff's allegations in subsequent pleadings (Dkt. #15-1) that his cell and person were searched and that as a result his legal mail or legal materials were confiscated do not state a valid constitutional claim. Plaintiff asserts that confiscation of his legal materials effected his ability to present a criminal defense and violated his right to privacy. Prison inmates do not have a right of privacy in their cells, and the Fourth Amendment proscription against unreasonable searches does not apply to searches of prison cells. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *United States v. Ward*, 561 F.3d 414, 419 (5th Cir. 2009); *Castillo v. Bowles*, 687 F. Supp. 277, 282 (N.D. Tex. 1988). The legitimate prison objective of maintaining constant security far outweighs a prisoner's right of privacy, assuming such a right does exist. *Bell v. Wolfish*, 441 U.S. 520, 539-41 (1979). "Indeed, a prisoner does not have an expected privacy interest in his personal belongings or in his legal materials." *Stamps v. Outz*, No. 3:16-cv-1700, 2017 WL 3492701, at *4 (W.D. La. July 21, 2017) (finding the mere viewing and copying of the plaintiff's property does not amount to a constitutional violation), *report and recommendation adopted*, No. 3:16-cv-1700, 2017 WL 3485566 (W.D. La. Aug. 14, 2017) (citing *Busby v. Dretke*, 359 F.3d 708, 715-16 (5th Cir. 2004) (prisoner has no Fourth Amendment privacy interest in cell nor in unsealed letters that were later used against him at trial)); *Rickerson v. Rust*, No. 5:17-cv-172, 2019 WL 8500865, at *9 (E.D. Tex. Nov. 13, 2019) (dismissing the prisoner's claim that seizure of legal papers violated his Fourth Amendment rights because prisoners have no expectation of privacy in their cell), *report and recommendation adopted*, No. 5:17-cv-00172-RWS, 2020 WL 633582 (E.D. Tex. Feb. 11, 2020), *aff'd*, No. 20-40208, 2021 WL 5871885 (5th Cir. Dec. 10, 2021). In this case, Plaintiff alleges that his legal materials were seized and sent to the prosecuting attorney. Even assuming

that he had a privacy interest in these materials, prison officials are afforded much discretion in such administrative matters. *Bell*, 441 U.S. at 540 & n.23. Federal courts will not intervene in legitimate administration except in the case of a constitutional violation. *Id.* The mere seizure of Plaintiff's legal materials does not amount to a constitutional violation. *See Cain v. Herrera*, No. CIV.A. C-04-502, 2005 WL 3312636, at *4 (S.D. Tex. Dec. 7, 2005) (no constitutional violation where the plaintiff's legal materials were seized and searched).

To the extent that Plaintiff's claim regarding the taking of his legal materials may be interpreted as asserting a claim of denial of access to the courts, this claim seeks to invoke the provisions of the First Amendment to the United States Constitution. In this regard, however, in order for Plaintiff to state a violation of his constitutional right to meaningful access to the courts, he must allege that he has suffered some cognizable legal prejudice or detriment as a result of the challenged conduct. *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *see also Lewis v. Casey*, 511 U.S. 1066 (1996). In the instant case, Plaintiff has wholly failed to assert that he sustained any legal prejudice as a result of Defendants' alleged conduct. For example, he has made no allegation that he has missed any deadlines in court proceedings or has otherwise been prevented from asserting non-frivolous legal claims before any tribunal. And although Plaintiff believes jail officials may have forwarded information from the letters regarding details of his alleged criminal activity to the prosecuting attorney, he has not shown or alleged that any information has been used against him or prejudiced his position. Accordingly, he has failed to show any prejudice resulting from Defendants' alleged conduct sufficient to support a claim under § 1983.

Finally, to the extent any of Plaintiff's allegations necessarily imply the invalidity of Plaintiff's conviction, they fail to state a § 1983 claim.[5] *Heck v. Humphrey*, 512 U.S. 477 (1994), provides that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486-87 (footnote omitted). When *Heck* conditions are not met, dismissal with prejudice until the conditions are met is appropriate. *DeLeon v. City of Corpus Christi*, 488 F. 3d 649,657 (5th Cir. 2007). Plaintiff has failed to show that his conviction has been reversed or declared invalid. Therefore, to the extent Plaintiff's § 1983 claims rest on allegations that necessarily imply the invalidity of Plaintiff's conviction, the claims should be dismissed with prejudice until he can show he satisfies the conditions set forth in *Heck*.

## C. **Injunctive Relief**

Plaintiff requests that the Detention Center be ordered to "offer treatment by mental health professionals." (Dkt. #1, p. 6). Because Plaintiff is no longer confined at the Detention Center, his request for injunctive relief is moot. The Fifth Circuit and district courts in Texas have repeatedly held that transfer out of the facility complained of moots any claim for declaratory or injunctive relief related to jail-specific remedies. *See, e.g., Kennemer v. Parker Cnty.*, No. 4:20-cv-056-P, 2021 WL 1192249, at *10 (N.D. Tex. Mar. 30, 2021) (collecting cases) ("As [plaintiff] is no longer

---

[5] With respect to Plaintiff's perjury allegation against Defendant Stewart, there is no private cause of action for perjury in federal court, nor is there a private right of action for civil perjury under Texas law. *Williams v. Williams*, No. 3:12-cv-0705-N BK, 2012 WL 3704277, at *3 (N.D. Tex. July 27, 2012), *report and recommendation adopted*, No. 3:12-cv-0705-N BK, 2012 WL 3715159 (N.D. Tex. Aug. 28, 2012); *Williams v. Cintas Corp.*, NO. 3:07-cv-0561-M, 2007 WL 1295802, *2 (N.D. Tex. Apr.10, 2007) (collecting cases finding no private cause of action for perjury), *recommendation accepted*, 2007 WL 1300780 (N.D. Tex. May 2, 2007).

housed in either of these county jails, however, his claims for injunctive or declaratory relief are moot."), *aff'd*, No. 21-10467, 2022 WL 2610239 (5th Cir. July 8, 2022); *Lee v. Valdez*, No. CIV.A.3:07-cv-1298-D, 2009 WL 1406244, at *14 (N.D. Tex. May 20, 2009) (collecting cases) ("Courts therefore hold, for example, that when a prisoner challenges prison conditions after he is released from confinement, his claim for injunctive and/or declaratory relief is moot, and the prisoner can no longer challenge the prison conditions unless he can point to a concrete and continuing injury.").

D.  **Leave to Amend**

Generally, a *pro se* plaintiff should be allowed to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) (per curiam) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). A district court may consider the following factors in deciding whether to grant leave to amend: undue delay; bad faith or dilatory motive on the movant's part; repeated failures to cure deficiencies by previous amendments allowed; undue prejudice to the opposing party; and futility of the amendment. *Id.* (citing *Schiller*, 342 F.3d at 566). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Brewster*, 587 F.3d at 768 (citation omitted). The Court also can deny leave to amend where such an amendment would be futile. *See, e.g.*, *Isom v. U.S. Dep't of Homeland Sec.*, No. 4:20-cv-948, 2021 WL 2232052, *3 (E.D. Tex. Apr. 28, 2021), *report and recommendation adopted*, 2021 WL 2224345 (E.D. Tex. June 2, 2021) (collecting cases). Furthermore, "'[w]hether leave to amend should be granted is entrusted to the

sound discretion of the district court.'" *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).

The Court gave Plaintiff opportunities to file an amended complaint (Dkt. ##23, 27, 30), but Plaintiff chose not to do so (Dkt. #32). To date, Plaintiff has failed to file an amended complaint or otherwise allege any facts that would suggest he has a viable claim. *See Shope v. Texas Dep't of Crim. Just.,* 283 F. App'x. 225, 226 (5th Cir. 2008) ("[The plaintiff] does not allege what facts he would include in an amended complaint. Therefore, [the plaintiff] has not shown that the district court abused its discretion in dismissing his complaint.") (citing *Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993)). Furthermore, Plaintiff has provided no indication that he would be able to cure the pleading deficiencies identified herein if he were allowed to amend his Complaint. Under these circumstances, Plaintiff should be denied leave to amend his Complaint.

### E. **Strike under 28 U.S.C. § 1915(g)**

Under the PLRA, an inmate may not file any lawsuit or appeal *in forma pauperis* if he has three or more lawsuits or appeals previously dismissed as "frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The statutory provision was designed to stop abusive litigious practices employed by inmates.

Because the Court is recommending dismissal of Plaintiff's claims in this case for failure to state a claim upon which relief may be granted, it is further recommended that Plaintiff be advised that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915, and that should he accumulate three strikes, he may be denied *in forma pauperis* status and be required to pay the full

19

filing fee when filing additional civil actions or appeals unless he demonstrates that he is in imminent danger of serious physical injury.

## IV. RECOMMENDATION

For the reasons set forth above, the Court recommends that Defendants' Motions to Dismiss (Dkt. ##35, 66) be **GRANTED** and that Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE**. The Court further recommends this dismissal be counted as a strike pursuant to 28 U.S.C. § 1915.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**SIGNED this 22nd day of August, 2023.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE